**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 09-81-DLB-CJS**

**THE POINT/ARC OF NORTHERN KENTUCKY, INC., ET AL.**                **PLAINTIFFS**


**vs.**                **MEMORANDUM OPINION AND ORDER**


**PHILADELPHIA INDEMNITY INSURANCE COMPANY**                **DEFENDANT**

*       *       *       *       *       *       *

This breach of contract, bad faith, and Kentucky Unfair Claims Settlement Practices Act action arises from Defendant Philadelphia Indemnity Insurance Company's failure to defend and indemnify Plaintiffs, The Point/Arc of Northern Kentucky, Inc., Judi Gerding, and Jo Anne Mahorney, during and after the settlement of a tort case.  The parties have filed Cross-Motions for Summary Judgment (Docs. # 90 and 91).  The matter is fully briefed (Docs. # 93, 96, 100, and 101) and ripe for review.  For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **granted**, and Defendant's Motion for Summary Judgment is **denied**.

**I.      Factual and Procedural Background**

The Point is a non-profit corporation which owns and operates eight group homes for the developmentally disabled.  Among these eight homes is Point Ridge Group Home in Burlington, Kentucky.  Joseph Daniel was a sixty-one-year-old mentally handicapped man who resided at Point Ridge.  While under The Point's care, Daniel was allegedly neglected and abused, physically and fiscally, by Mary Ellen Allen, a live-in manager at

1

Point Ridge.   Allen was accused of neglecting Daniel by failing to provide adequate healthcare and nutrition and of misappropriating Daniel's personal funds.   Daniel was left unsupervised and suffered multiple falls.   He was also fed food that was over two years out-of-date.

On April 19, 2006, two weeks after one of his falls, Daniel died.   Concerned about the circumstances surrounding Daniel's death, The Point contacted their Directors and Officers policy provider, Defendant Philadelphia Indemnity, and asked it to confirm its responsibilities and intentions regarding defense and indemnity of The Point in the event of a lawsuit or other claim against the company.   Defendant denied any coverage for a claim arising from Allen's conduct or that of any other The Point employee.

On March 24, 2008, Carl Daniels,[1] brother of Joseph Daniel, filed suit in Boone County, Kentucky, Circuit Court, alleging, among other things, negligence by The Point in supervising and auditing Daniel's funds.   After this suit was filed, The Point again contacted Defendant to apprise them of the situation and to seek another opinion as to defense and coverage of the Daniel Estate's claim.   Defendant again denied any duty to defend and all responsibility for indemnifying a potential claim.

Meanwhile, Great American Insurance, which provided general liability coverage to The Point, agreed to defend the company against Daniel's suit.   The case ultimately settled in mediation for $350,000.   Great American and The Point then executed a "Loan and Prosecution Agreement" in which Great American agreed to loan The Point the settlement funds in exchange for a promise to seek indemnity against Defendant.

---

1) Carl Daniels, Joseph Daniel's brother, added an "s" to his surname.

2

Following through with their promise to seek indemnity from Defendant, Plaintiffs filed the instant action on June 15, 2009 (Doc. # 1). The Court previously found that Defendant had breached its duty to defend Plaintiffs in the underlying tort case (Doc. # 12). The remaining issues are: (1) whether Defendant is obligated to indemnify Plaintiffs for some or all of the settlement amount; (2) if so, what amount do they owe Plaintiffs; (3) whether Defendant must reimburse Plaintiffs' defense costs; and (4) whether Defendant's conduct rises to the level of bad faith. Plaintiffs and Defendant have each moved for summary judgment on these issues.

## II.   Analysis

### A.   *Standard of Review*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; rather, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire &*

3

*Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Importantly, the standard of review does not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Such motions require the Court to "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 2004).

**B.    *Defendant Philadelphia Indemnity's Director & Officer's Policy covers the Daniel's Settlement***

The Court must now consider under what circumstances, and pursuant to what legal standard, an insurer that has breached its duty to defend must indemnify its insured for the costs of settlement.  Neither Kentucky courts nor the Sixth Circuit have addressed the precise question raised in this case, so the Court must survey related case law in order to formulate an appropriate rule.

**1.    Relevant Case Law**

**a.    *Kentucky Case Law***

If an insured asked its insurer to defend it in an action, the insurer has several options.  Of course, it can defend its insured.  If, however, the insurer does not believe its policy provides defense coverage for the underlying matter, it can either outright refuse to defend or offer its defense under a reservation of rights.  But the latter is the preferred course of action, *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 652 (6th Cir. 2013), and an insurer that elects not to defend its insured does so at its own peril. *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 522 (Ky. 1987).  However, even defending

4

under a reservation of rights involves some risk:

> "If [the insurer] is correct in its position that the policy does not afford coverage or has been breached in some way, then it prevails regardless of whether the insured accepts the defense [under a reservation of rights] – but it offers such a defense at its peril, because if the insured refuses to accept it and elects to defend himself, the [insurer] is bound by the result, in the absence of fraud or collusion, unless it can establish that the policy did not afford coverage or was breached by the insured."

*Medical Protective*, 581 S.W.2d 25, 26-27 (Ky. Ct. App. 1979).

As a general matter, Kentucky courts have long recognized that an insurer that breaches its duty to defend will be liable to its insured for judgments and settlements obtained after that breach. *See Interstate Cas. Co. v. Wallins Creek Coal Co.*, 176 S.W. 217, 219 (Ky. 1915). In more recent times the Kentucky Supreme Court has further developed this rule by applying the reasonableness and absence-of-fraud provisions from *Medical Protective* to breach of the duty to defend cases. Specifically, the Kentucky Supreme Court has held that the insurer is bound by the result in the underlying case so long as that result is within coverage and reached in the absence of fraud or collusion. *See O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 393 (Ky. 1984).

### b.   *Actual Versus Potential Legal Liability*

The above-cited cases emphasize that the claim must come within policy coverage in order to trigger indemnity. To determine whether the claim is within coverage, one must look to the provisions of the indemnity agreement itself.[2] *See United States Fidelity &*

---

2) At the outset, it is important to distinguish between common-law and contractual indemnity. Common-law indemnity is a separate cause of action in which the party seeking indemnity must demonstrate that it would have been actually legally liable to the third party. *Thompson v. The Budd Co.*, 199 F.3d 799, 806-07 (6th Cir. 1999). Common law indemnity is an action in which one party has become liable to another and the liable party seeks restitution from a third party for that liability. *Id.* (citing *Crime Fighters Patrol, Inc. v. Hiles*, 740 S.W.2d 936, 940 (Ky. 1987)). The

5

*Guar. Co. v. Napier Elec. & Const. Co.*, Inc., 571 S.W.2d 644, 646 (Ky. Ct. App. 1978). Under Kentucky law, parties may contract "for indemnification for – among other things – the costs incident to potential legal liability as well as for the legal liability itself." *See Thompson v. The Budd Co.*, 199 F3d 799, 806-07 (6th Cir. 1999). Thus, there are two conceivable bases for holding an insurer liable for insured's legal liabilities – a judgment or a contractual agreement covering potential legal liability. *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 792 F. Supp. 2d 958, 961 (E.D. Ky. 2011) (holding that there are only two conceivable bases for holding an insurer liable for its insured's liabilities: 1) a judgment; or 2) a contractual agreement between the parties that the insurer would pay for its "insured's voluntary settlements no matter whether the insured could have actually have been held liable.").[3]

### c.   *Defendant's Arguments Are Not Grounded in Law or Sound Policy*

Regardless of above-cited case law or its contractual agreement to the contrary, Defendant insists that actual legal liability is the standard required for it to indemnify Plaintiffs in this case. The Court disagrees. Defendant relies primarily on two recent Sixth

---

indemnity in common law cases, however, is based on the negligent acts or some other fault of that third party. *Id.* Common law indemnity is thus much more akin to a tort action than one for contract. The party seeking common law indemnity must demonstrate that it was or would have been actually legally liable to the third party. *The Budd Co.*, 199 F.3d at 806-07. This can be supported by evidence of a judgment, or in the event of a settlement, by looking into the facts of the catalyst case to determine if the indemnitee would have indeed been liable to a third party. Common law indemnity is not an issue in this case, however, because the indemnity here is created by the terms of an insurance contract.

3)  In a recent decision, a sister court in the Eastern District of Kentucky held "Kentucky law distinguishes between contractual and common law indemnity claims." It also stated that contractual indemnity may cover not only damages, but also "losses, expenses, and various other liabilities and obligations" related to potential legal liability. *Vaughn v. Konecranes, Inc.*, 2015 WL 3453457, at *2-3 (E.D. Ky. May 29, 2015).

Circuit decisions interpreting Kentucky insurance law: *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269-70 (6th Cir. 2010), and *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589 (6th Cir. 2013). However, these cases do not require actual legal liability in cases where the parties contracted for potential legal liability. The Court will first review the cases relied upon by Defendant, and then highlight the potential adverse consequences created by its proposed rule.

In *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, the Sixth Circuit held that the duty to indemnify arises only when "there is an actual basis for the insured's liability to a third party." 598 F.3d at 269-70. It went on to say that the insured was required "to show that it *could* have been held liable . . . for a covered claim if there had not been a settlement." *Id.* (emphasis added). *Travelers* also noted that, for the indemnitee to prevail, it would need to demonstrate that it could have been held liable for a covered claim had the case not settled, "which includes looking beyond the pleadings to the evidence presented in [the indemnitee's] case-in-chief." *Id.* at 269-70. The court went on to state that it was required to consider whether there was any evidence beyond the third-party pleadings supporting the proposition that there was still a covered claim at the time of settlement. The court seems to have not been applying the actual-legal-liability test, however, because it stated that resolving the indemnity issue required: (1) looking at the third-party complaint to determine if a covered claim was pled; and (2) deciding whether any covered claim was still viable at the time of settlement. Determining whether a claim was still present at the time of settlement is different than requiring proof of actual legal liability; instead, it is similar to requiring proof that the settlement was for a claim within coverage, which is essentially the same as what the Court is requiring here.

7

The "actual basis" language in *Travelers* led some courts to ponder if all indemnity actions require proof of actual legal liability in the wake of *Travelers*. The district court in *Martin County Coal* was aware of this issue and highlighted the point in its well-reasoned opinion. *Martin Cnty. Coal Corp.*, 792 F. Supp. 2d. at 960-63. But because the contract at issue in *Martin County Coal* did require actual legal liability, the district court noted that "[i]t need not decide whether settling insureds . . . must *always* show 'actual liability,' no matter the terms of the policy." *Id.* at 963.

Defendant relies heavily on the Sixth Circuit's opinion in *Martin County Coal* for its suggestion that actual legal liability is required in all indemnity actions. In *Martin County Coal*, the court of appeals held that "[u]nder Kentucky law, an insured who has paid a settlement to a third party must prove that it could have been legally compelled to pay the settlement before the insured can get indemnity from its insurer." *Id.* at 594. Stated differently, the court said "if an insured settles with a third party, but the insured *would* not have been actually legally liable to the third party, then the insurer does not have to indemnify the insured for having paid a settlement to the third party." *Id.* (emphasis added) (citing *Ky. Sch. Bds. Ins. Trust v. State Farm Mut. Ins.*, 907 F. Supp. 1036 (E.D. Ky. 1995), and *Barnes v. Pa. Cas. Co.*, 208 S.W.2d 314 (Ky. 1948)).

Thus, *Martin County Coal* took the "could" from the actual-basis analysis in *Travelers* and seemingly declared that insureds must show that they "would" have been liable to the third party. Does *Martin County Coal* hold that contractual indemnity actions always require proof of actual legal liability? The Court thinks not. The insurance contract at issue in *Martin County Coal* required that any coverage be premised on actual legal liability. *Martin Cnty. Coal*, 727 F.3d at 595. Thus despite its seemingly broad language, the court of

8

appeals did not affirmatively state that, regardless of the contract terms, coverage of settlements after a breach of the duty to defend requires actual legal liability.  In fact, the Court has been unable to find a case in which an insurer breached its duty to defend and the insurance contract provided coverage for potential legal liability, but wherein the deciding court still required actual legal liability.

Additionally, several policy considerations that are ingrained in Kentucky law persuade the Court that this result is proper.  First, the language of the parties' contract should govern.  In the absence of ambiguity, a "written instrument will be enforced strictly according to its terms."  *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citing *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966).  Enforcing the contractual provision at issue here respects the freedom of contract between two sophisticated parties.  Holding otherwise would render the potential-legal-liability provision a meaningless term, and the insurer would "receive something it neither bargained nor paid for", while the insured "would be required to pay for something it had contracted to avoid in spite of fully performing its agreements."  *See Middletown Eng'g Co. v. Climate Conditioning Co.*, Inc., 810 S.W.2d 57, 59 (Ky. Ct. App. 1991).

For example, imagine a case where the insurer did not breach its duty to defend and the contract provided for coverage of potential legal liability.  If a court was tasked with determining coverage, would it ignore the terms of the contract and instead require actual legal liability to be shown by the insured? Surely not. So why should the case be any different where the insurer has previously breached a contractual provision?  In essence, holding that actual legal liability is required in cases where the contract provides coverage for potential legal liability would be to say that those clauses are unenforceable.  Such a

9

holding would offend freedom of contract principles and wreak harm on insureds who have bargained for coverage of potential legal liability.

Second, denying coverage where the contract provides for potential legal liability would discourage settlement and encourage litigiousness, a result that is in conflict with Kentucky's longstanding preference for encouraging fair and reasonable settlements. *See Dexter v. Duncan,* 265 S.W. 832, 832 (Ky. 1924). Imagine the catch-22 in which an insured would be placed should the rule in this case be different. The insurer has denied coverage and is refusing to defend. The insured is then uncertain about whether it will have to pay the claim out of pocket. Knowing this, it will be encouraged to settle the case quickly and for as little as possible (which are the exact same motivations the insurer would have should it have chosen to defend). However, if the Court were to require the actual legal-liability-rule, the insured would also have to worry about the case being sufficiently developed so that more onerous standard could be met. While it is not clear that the actual-legal-liability rule requires the Court to "try a case within case" in every instance, the rule certainly requires a deep delving into the facts of the third-party claim that initiated the coverage question. *See Ky. Sch. Bds. Ins. Trust v. State Farm Mut. Ins.*, 907 F. Supp. 1036, 1037-38 (E.D. Ky. 1995) (holding that a subrogation claim required the parties to try the case as a case-within-a-case to determine if the insured would have been liable to third-party plaintiff). The insured would then feel pressure to drag out the case in order to develop a more complete record for the insurance-coverage claim, which, ironically, might increase the amount that the insurer ultimately has to pay should coverage be found.

And finally, actual legal liability should be disfavored because it requires the Court rummage through the facts of a prior dispute. Not only is the Court forced to weigh and

10

decide evidence from a cold record, but because the cases in which this rule is applied have all settled, they will also be at varying levels of development.

### d. *Rule*

The above analysis leads the Court to conclude that the rule in this case should be this: where an insurer is found to have breached its duty to defend and the indemnity contract provided coverage for potential legal liability, it will be liable for a judgment or settlement stemming from the underlying action that necessitated the indemnity claim when two requirements are met. First, the insured must show that the claim settled was in fact covered by the policy. *See Vance*, 730 S.W.2d at 522; *see also Medical Protective*, 581 S.W.2d at 26-27; *O'Bannon*, 678 S.W.2d at 393. Second, the settlement must have been reasonable and reached in the absence of fraud or collusion. *Wallins Creek Coal*, 176 S.W. at 219; *see also Grimes v. Nationwide Mut. Ins. Co.*, 705 S.W.2d 926, 932 (Ky Ct. App. 1985); *Estate of Clem v. Western Heritage Ins. Co.*, 195 F. App'x 328, 332-33 (6th Cir. 2006) (per curiam) (holding that an insurer that "mistakenly fails to defend an insured is liable for reasonable settlements under Kentucky law").

Limiting this rule to only those cases where the insurance contract covered potential legal liability and the insurer breached its duty to defend is in accord with the above-cited Kentucky law and the holdings of the Sixth Circuit. The Court does not believe that one sentence from *Martin County Coal*, which does not explicitly overrule the Sixth Circuit's holdings in *The Budd Co.* or *Estate of Clem*, is sufficient to overcome the mass of holdings and sound policy that underpin Kentucky insurance law. Further, the Court believes it is more likely that *Travelers* and *Martin County Coal* stand for the perfectly reasonable proposition that, before an insurer is held liable for indemnity, the insured must show that

11

claim settled was within a valid policy's coverage. Such a rule prevents insureds from converting every breach of the duty to defend into liability for subsequent settlements. And in cases where actual legal liability was required by the insurance contract, the actual-legal-liability test will be a natural part of making this determination. Yet this rule also prevents an insurer from nullifying a bargained-for contract provision, namely coverage for potential legal liability, by means of a prior breach of its duty to defend.

### 2.   Application

In Kentucky, the interpretation of an insurance contract is a question of law for the Court to decide. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002); *see also Caudill Seed & Warehouse Co., Inc. v. Houston Cas. Co.*, 835 F. Supp. 2d 329, 332 (W.D. Ky. 2011). Unless there is an ambiguity, "a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear*, 103 S.W.3d at 106; *see also York v. Ky. Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 293 (Ky. 2005) (holding that "[t]he clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning."). If, however, a contract is susceptible to different interpretations by reasonable minds, any doubts must be resolved in favor of the insured. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (holding that a contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations); *see also Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984) (stating that any doubt must be liberally construed in favor of the insured).

Here, the insurance contract between The Point and Defendant unambiguously covers potential legal liability, namely settlements. The contract indemnifies The Point for

12

"Losses" which are comprised of "Damages" and "Defense Costs". The D&O policy issued defines "Damages" as "a monetary judgement, award or settlement including punitive, exemplary or multiple portion thereof...". (Doc. # 90-2, p. 29). Settlement, as it is ordinarily understood, is an "agreement ending a dispute or lawsuit." BLACK'S LAW DICTIONARY (10th ed. 2014). By default, a settlement means that actual legal liability was not imposed; indeed, the whole point of a settlement agreement is to avoid the uncertainty of a court declaring a judgment. Because of the costs of litigation and the uncertainties of trial, most cases settle. Thus, it comes as no surprise that an insurance contract that covers legal claims against a corporation's directors and officers would cover settlements as well as actual legal liability.

Simply finding that the policy covers settlements, however, does not end the Court's analysis. It still must determine whether the insurance contract at issue covered settlement of any of the types of claims settled by The Point with the Daniel Estate. If the settled claims were not of the sort covered by the insurance contract, Defendant would not owe any indemnity to The Point, notwithstanding the former's breach of its duty to defend. The Professional Services Exclusion of the insurance contract provides in pertinent part:

> ". . . the Underwriter shall not be liable to make any payment for Loss in connection with any Claim made against the Insured based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any involving the Insured's performance of or failure to perform professional services for others.
>
> Provided, however, that the foregoing shall not be applicable to any derivative action Claim alleging failure to supervise those who performed or failed to perform such professional services."

(Doc. # 90-2, p. 42).

13

Thus, under the policy, there was a negligent supervision carve-out to the Professional Services Exclusion. The Daniel Estate's allegation of negligent supervision by The Point and its officers and directors in its Boone County Circuit Court complaint comes within this negligent supervision carve-out. (See Doc. # 90-1, p. 5, paragraph F). According to the complaint, the failure to engage in adequate record keeping and oversight led to the embezzlement of Daniel's personal funds by an employee of The Point. This finding is consistent with the Court's prior Memorandum Opinion and Order, which held that "[a]lthough the allegation that Plaintiffs' negligent supervision of Mary Ellen Allen caused Daniel's death likely falls outside the coverage of the insurance policy, the allegation that Plaintiffs' negligence led to the theft of Daniel's life savings likely does not." (Doc. # 12, p. 10).

### 3.     Philadelphia waived its consent provision when it breached its duty to defend

Finally, Philadelphia argues that its insured must demonstrate actual legal liability because it did not conform with the policy provisions requiring consent to any settlement. The only instance in which actual legal liability must be shown despite the fact that the policy otherwise covers potential legal liability is where the insured settles a case without the consent of the insurer.  41 AM. JURISPRUDENCE 2d § 27; *see also O'Bannon*, 678 S.W.2d at 393; *Medical Protective*, 581 S.W.2d at 27.  As the Court earlier observed, when an indemnity contract covers settlements, the majority of jurisdictions require only that the settlement be reasonable and that the underlying claim be a valid one within the coverage of the contract.  41 AM. JURISPRUDENCE 2d § 27.  Further, most jurisdictions do not require actual legal liability when the contract provides coverage of potential liability, unless there

was a lack of consent or notification by the insured.  *Id.*  In cases where the insured fails to notify or settles without consent, the insured is required to show the presence of actual legal liability in order to prevent insureds from taking advantage of their insurers.

Such a case is not present here, however, because Defendant waived its right to require consent to the settlement when it breached its duty to defend.  *See Wallins Creek Coal*, 176 S.W. at 219.  It is true that the policy between The Point and Defendant required the latter's consent before any settlement was reached.  But it is equally true that, by breaching its duty to defend, Defendant waived any right to enforce that provision of the contract.  *Id.*  Breaching its duty to defend is not a valid way for an insurer to withhold its consent.

Finding that Defendant waived its right to consent to the settlement is in harmony with Kentucky law and common sense.  In *Wallins Creek Coal*, an insurance company sought to avoid paying a settlement because it was reached without its consent, as was required by the insurance contract.  That contract, like the one here, provided coverage for potential as well as actual legal liability.  And that contract, again as here, required that the insurer consent to any settlement before coverage attached.  When approached with a potential claim, the insurance company in *Wallins Creek Coal*, besides a brief initial investigation of the accident at issue, did nothing in the matter to help its insured.  The insurance company simply concluded that it did not have coverage of the claim and neglected to do anything else.  The Kentucky Supreme Court, relying heavily on the U.S. Supreme Court case of *St. Louis Dressed Beef & Provision Co. v. Md. Cas. Co.*, 201 U.S. 173 (1906), held that an insurance company cannot be allowed to escape liability for a settlement to which it did not consent where that lack of consent was created by the

15

unjustified inaction of the insurer.

Although the facts herein are not identical to *Wallins Creek Coal*, that case influences its holding.  Defendant informed The Point of its position and instructed it that it did not believe that the policy provided coverage for any of the claims.  This is more than the defendant in *Wallins Creek Coal* did.  Here, however, Defendant did not operate in an open and fair way with its insured.  In addition to wrongly declining to defend its insured, it claimed that its contract with The Point contained no duty to defend in any form.  This is untrue.  And just as the *Wallins Creek Coal* court observed, permitting Defendant to convert the potential-legal-liability provision in the insurance contract into actual-legal-liability one by wrongly failing to defend its insured and then claiming lack of consent would be to permit the insurer "to perpetrate an intolerable fraud on the insured" by stealing its contractually-bargained-for rights.  *Wallins Creek Coal*, 176 S.W. at 219.

This result is fair because Defendant could have defended under a reservation of rights.  Insurers that believe a claim is not within coverage have two options: defend under a reservation of rights or refuse to defend at their own peril.  Defending under a reservation of rights would have permitted defendant to participate in the litigation and settlement, and if it still contested coverage at time of settlement, to seek judicial determination of coverage and reimbursement if the claim was not covered by the policy.  *See Travelers*, 598 F.3d at 268.  Defendant chose not to do so.  Now that Defendant has gambled and lost, it will not be allowed to rewrite the rules of the game.

Defendant complains that it is unknown what portion of the settlement was for the negligent supervision claim as it relates to the misappropriation of funds and how much of it was for other tortious conduct not covered by their policy.  While these are seemingly

16

reasonable complaints, most of Defendant's gripes stem from injuries of its own making. Had Defendant participated in the settlement negotiations, as it was repeatedly asked to do, it could have informed those discussions and helped to shape the settlement.  Instead, Defendant chose to not to defend its insured and to make misrepresentations to its insured and another insurance carrier about its duty to defend.

As a matter of law, the Court finds that the Daniel's Settlement came within the D&O policy's coverage.  Defendant also has not presented any evidence of fraud or collusion between Plaintiffs and the Daniel Estate; accordingly, Plaintiffs are entitled to summary judgment on that issue as well.  It remains for a jury to determine, however, whether the settlement was reasonable, and if so, what portion of that settlement should be indemnified by Defendant.

### C.     *Philadelphia must reimburse The Point for defense costs incurred in defending and settling the Daniel Estate's claim*

Defendant must also reimburse Plaintiffs for the defense costs they incurred in defending and settling the Daniel Estate's claim.  Defendant makes two arguments why it should not have to indemnify The Point for its defense costs.  Both fail.  First, it argues that, under the terms of its contract with The Point, Defendant does not have to reimburse the defense costs because another insurer provided defense coverage.  Under the escape clause in the contract, the argument goes, Defendant escapes liability because Great American's contract with The Point provided coverage for defense costs.  Second, it argues that, even if Defendant would otherwise owe defense costs to The Point, it does not owe any in this case because the Loan and Prosecution Agreement executed by The Point and Great American does not ask The Point to seek defense costs from Defendant.  Each

17

argument will be addressed in turn.

Kentucky courts have previously addressed the factual situation presented by Philadelphia's and Great American's seemingly conflicting insurance policies. And the rule from those cases is clear: an escape clause does not operate where the additional insurance policy does not provide primary coverage.

The clause at issue in Defendant's insurance policy provides that Defendant will cover defense costs that are reasonable and necessary, but excluded are "any amounts incurred in defense of any Claim for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such a duty." (Doc. # 90-2, p. 29). Such a provision is common in the insurance world and is known as an escape clause.

As one might anticipate when multiple insurance companies are involved, terms and clauses often conflict. Defendant's escape clause is a "standard" one because "it is a general disclaimer of risk solely due to the presence of other insurance." *See Great American Assurance Co. v. American Cas. Co. of Reading*, 511 F. App'x 431, 436 (6th Cir. 2013). Kentucky courts have routinely held that an escape clause such as the one in Defendant's policy is operative only where the other insurer provides primary coverage for defense costs. *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 674 (Ky. 1974); *see also Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 453 (Ky. 1997). Great American's policy does not provide primary coverage; instead, it operates as excess-coverage clause, and provides coverage only when the primary insurer's policy limits have been reached. See Doc. # 90-3 at p. ID 1854.

18

Under Kentucky law, "where a standard escape clause conflicts with an excess clause, the insurer with the standard escape clause is not relieved of its obligation to provide primary coverage." *Great American*, 511 F. App'x at 438; *see also Ohio Cas. Ins. Co.*, 511 S.W.2d at 674. This is logical since the excess-coverage provider owes nothing until the primary provider's policy has been exhausted. To hold otherwise would convert every excess-coverage clause into a primary-coverage clause by the mere existence of another insurer's standard escape clause. Accordingly, the Court finds that Defendant's escape clause is inoperative here because it was the sole provider of primary coverage for The Point's defense costs.

Defendant next argues that it owes nothing to its insureds because Great American fronted defense costs to Plaintiffs and did not explicitly require The Point to seek reimbursement for those costs. However, the Loan and Prosecution Agreement is irrelevant for the purposes of determining whether Defendant owes defense costs to The Point. The simple fact of the matter is Defendant breached its duty to defend, and insurers that breach their duty to defend are liable to their insureds for reasonable defense costs incurred. The Point is entitled to recover these defense costs, and it may ultimately recover some portion of the Daniel's Settlement as well. But how much The Point ultimately owes Great American is an issue between those parties.[4]

---

4)  If The Point does not follow the requirements of the Loan and Prosecution Agreement, Great American may institute a breach of contract action against it.  The Court, however, is not tasked with determining the rights and responsibilities under that contract.  Instead, it is tasked with adjudicating the claims that exist between The Point and Philadelphia, the only parties currently before the Court.

Even if it were relevant, the Court disagrees with Defendant's reading of the Loan and Prosecution Agreement.  In its third paragraph, that agreement states that The Point agrees "that some or all of the defense and indemnity costs arising from or relating to the Daniels Lawsuit and Daniels Settlement are covered by insurance policies issued by insurance carriers other than Great American."  Doc. # 101-8 at p. 1.  It also requires The Point to recover these costs from the other insurance carriers.  Accordingly, the Court believes that the plain and ordinary meaning of the Agreement encompasses reimbursement of defense costs.

Philadelphia breached its duty to defend, and as the sole primary carrier of coverage for any defense costs incurred, must indemnify The Point.  The proper amount of defense costs is an issue that must be determined by a jury.

### D.    *The Point's bad faith claims against Philadelphia are sufficient to survive summary judgment and be presented to the jury*

Kentucky law permits a bad faith claim predicated upon "failure to defend and to deal with [the] insured in good faith."  *Grimes*, 705 S.W.2d at 932.  Kentucky uses a three-part test for bad-faith claims in insurance cases: (1) proof of an insurer's obligation to pay a claim; (2) a lack of a reasonable basis to deny the claim; and (3) knowledge or reckless disregard towards coverage.  *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

The first part of the test has been satisfied as a matter of law because the Court has determined that Defendant owed a duty to defend The Point and that it must indemnify some amount of the Daniel's Settlement.  As for the other two elements, the Court finds that there is a genuine issue of material fact as to: 1) whether Defendant had a reasonable basis for breaching its duty to defend and for denying coverage; and 2) whether it acted

with knowledge or reckless disregard towards coverage.  Specifically, The Point has shown that Defendant instructed those involved in the mediation that its policy contained no duty to defend. That is patently untrue.  Whether this misrepresentation was a simple oversight or a meanspirited lie is for a jury to determine.[5]

## III.   Conclusion

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1.      Plaintiffs' Motion for Summary Judgment (Doc. # 90) is **granted** in full.

2.      Defendant's Motion for Summary Judgment (Doc. #91) is **denied** in full.

This 22nd day of December, 2015.



Signed By:

David L. Bunning

United States District Judge

G:\DATA\ORDERS\Cov09\09-81 Order Granting Plaintiffs' SJ.wpd

---

5)  If the jury finds bad faith, it will have to calculate the appropriate damage award as well.